[Cite as *Fahrubel v. White*, 2017-Ohio-8334.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

| | | |
|---|---|---|
| PAMELA FAHRUBEL | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2017-CA-28 |
| | : | |
| v. | : | Trial Court Case No. 17-CVI-205 |
| | : | |
| AARON WHITE (EZ AUTOMOTIVE) | : | (Civil Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 27th day of October, 2017.

. . . . . . . . . .

PAMELA FAHRUBEL, 1844 S. Clarksville Road, Clarksville, Ohio 45113
    Plaintiff-Appellee, Pro Se

AARON WHITE, 772 Murray Hill Drive, Xenia, Ohio 45385
    Defendant-Appellant, Pro Se

. . . . . . . . . . . .

HALL, P.J.

{¶ 1} Aaron White appeals pro se from the trial court's decision and judgment entry awarding plaintiff-appellee Pamela Fahrubel $3,900 plus interest on her small-claims complaint concerning White's repair work on her car.

{¶ 2} Although White's appellate brief lacks a formal assignment of error, he contends the trial court erred in valuing Fahrubel's car at $2,500 for purposes of its damages award. He claims the car's value was $305.

{¶ 3} The record reflects that Fahrubel contacted White about repairing the engine of her 2006 Chevy Trailblazer. White was employed full-time as a mechanic, but he also performed work on the side out of a shop at his mother's house. In early October 2016, White examined the vehicle and agreed to repair it. He assessed the problem as involving spun bearings in the bottom of the engine, and he estimated that the cost would be about $1,400. Shortly thereafter, White began working on the car and discovered additional related repairs that were required. He advised Fahrubel that the total cost would be $1,969.86 and that it would take a "[c]ouple weeks." Fahrubel gave him $1,400 toward the total cost. On October 10, 2016, White informed Fahrubel that he had found more problems and that the total cost would be about $2,500. In November 2016, Fahrubel began asking about a completion date for the work. In a series of text messages, White gave various reasons for the work not being completed. They included sending parts out to be machined, waiting for back-ordered parts, and family-related reasons. On November 29, 2016, White revised his cost estimate to $2,810. On December 8, 2016, Fahrubel asked whether he expected the job to be completed by the end of the month. White responded affirmatively. Citing illness, an out-of-town trip, and other reasons, White

repeatedly advised Fahrubel that "progress has been made" while extending the completion date. On February 7, 2017, White stated that he would be done "[n]ot this weekend but next." On February 10, 2017, he estimated that he had "maybe" fifteen to twenty more hours of labor to perform. On February 19, 2017, Fahrubel asked again when the car would be fixed. White responded that he was "looking at next week."

{¶ 4} By late February 2017, White still had not completed the job. At that point, the parties' relationship deteriorated. Fahrubel contacted the sheriff's office, and White demanded additional payment for work performed to date. On March 1, 2017, he told Fahrubel that the job was three-fourths done and that she could pay him an additional $1,055.22 and retrieve her vehicle in its partially-disassembled condition. Alternatively, he told her he could finish the job for a total cost of $3,084.08. The parties failed to reach an agreement, and White refused to release the car. As a result, Fahrubel filed a small-claims complaint on March 3, 2017, alleging breach of contract. She requested total damages of $5,400 plus interest.

{¶ 5} The matter proceeded to an April 11, 2017 bench trial at which Fahrubel and White both testified and presented supporting exhibits. After reviewing the evidence, the trial court filed an April 19, 2017 decision and judgment entry in favor of Fahrubel. The trial court noted that, as a small-claims court, it lacked authority to order the car returned to Fahrubel (as in a replevin action) or to order certain requested damages. It then reasoned:

> * * * The Court is persuaded however Plaintiff is entitled to compensation by the Defendant for his failure to complete the repairs in a workmanlike or timely fashion. It appears the vehicle in its current form is

worth nothing more than parts. The Court therefore calculates damages to be paid by Defendant to the Plaintiff as follows:

| | | |
|---|---|---|
| Private Party Value of the vehicle | : | $2,500.00 |
| Deposit paid | : | 1,400.00 |
| **Total** | : | **$3,900.00** |

In addition, Plaintiff is entitled to interest on the judgment since the date of filing her Complaint along with the costs of this action.

(Doc. #8 at 2).

{¶ 6} On appeal, White argues that the trial court erred in valuing Fahrubel's vehicle at $2,500, which he testified below was the Kelly Blue Book value for a 2006 Chevy Trailblazer in "good condition." (Tr. at 19; *see also* Defendant's Tr. Exhibits at pg. 5, KBB estimate). White contends the vehicle Fahrubel brought him was not in "good condition" because it had a bad engine. He also claims Fahrubel's vehicle was a two-wheel-drive 2006 Chevy Trailblazer. Even in "good condition," White now asserts that the Kelly Blue Book value of the two-wheel-drive version was only $1,941. After subtracting the cost to repair Fahrubel's inoperable vehicle from its Kelly Blue Book value in "good condition," White asserts that her vehicle, as he received it, had a negative value, making it effectively worth $305.20 in scrap metal. Therefore, White contends that the trial court should have awarded Fahrubel damages of at most $1,400 (the money she paid him) plus $305.20 (the scrap value of her inoperable vehicle), for a total of $1,705.20.

{¶ 7} Alternatively, White argues that he now has completed the repairs to the car and that Fahrubel should be required to pay him the current balance owed, $1,684, to obtain her car. Finally, he states that he is willing to accept title to the vehicle while paying

Fahrubel the $21.20 difference between what he believes he owes her ($1,705.20) and what he believes she owes him ($1,684).

{¶ 8} Upon review, we reject the last two options proposed by White. At the time of trial, repairs to the car had not yet been completed. In addition, White did not file a counterclaim for damages against Fahrubel, and the trial court did not enter judgment in his favor. The record also supports the trial court's finding that White breached his agreement with Fahrubel by failing to complete the repairs in a timely, workmanlike manner. Therefore, we have no basis to find him entitled to recover from Fahrubel.

{¶ 9} The issue properly raised by White's appeal is whether the trial court erred in valuing Fahrubel's car at $2,500 for purposes of its damages award. On this issue, we agree with White that the evidence does not support a $2,500 value. "One who contracts to repair or service an automobile is liable for any damage proximately resulting from the negligent or unskillful manner in which he makes the repairs or performs the services[.]" *Landon v. Lee Motors, Inc.*, 161 Ohio St. 82, 83, 118 N.E.2d 147 (1954). Here White contracted to repair Fahrubel's car but failed to do so despite possessing it for several months. At the time of trial, the front end of her car remained disassembled, or "stripped," because White still was working on the engine. The trial court concluded that it could not order the car returned to Fahrubel because it lacked jurisdiction over replevin actions. *See* R.C. 1925.02(A)(2)(a)(i). Therefore, the trial court elected to award her the book value of her car, along with a return of the $1,400 she had paid White.

{¶ 10} But the Kelly Blue Book value the trial court adopted was the book value of a 2006 Chevy Trailblazer in "good condition."[1] The vehicle Fahrubel brought White, and

---

[1] On appeal, White contends Fahrubel's vehicle is worth only $1,941 in good condition

which he retained, manifestly was not in "good condition." It was inoperable and needed the engine rebuilt or replaced. White provided uncontroverted testimony that a book value premised on a vehicle being in "good condition" means that nothing more than "minor mechanical repairs" are needed. (Tr. at 20). He testified that "[r]ebuilding an engine or requiring an engine is not minor repairs." (*Id.*).

{¶ 11} In short, Fahrubel gave White $1,400 and a vehicle in inoperable condition. The trial court awarded her $1,400 and the value of a vehicle in good, running condition. Because Fahrubel's entire payment was ordered returned to her and White has retained the vehicle, Fahrubel's damages consist of the loss of her vehicle as it existed when she brought it to him. Therefore, she is entitled to the value of the vehicle in the unrepaired condition in which she delivered it to White.[2] On appeal, White argues that the vehicle's

---

because it is a two-wheel drive, not a four-wheel drive. At trial, however, White himself admitted that Fahrubel's vehicle was worth $2,533 in good condition. (Tr. at 19). We note too that neither party addressed whether Fahrubel had a two-wheel drive vehicle or the four-wheel drive version. Therefore, we cannot say the trial court erred in assigning a value of $2,500 to a 2006 Chevy Trailblazer in "good condition."

[2] Fahrubel claims she is entitled to the value of a vehicle in good condition because she contracted with White to make the vehicle in good condition. But the trial court gave Fahrubel her entire $1,400 payment back. We do not agree that Fahrubel is entitled to recover the value of a vehicle in good condition *and* the $1,400 she paid White. We would reach a different conclusion if Fahrubel had made full payment to White, who had kept the money and completed the engine repair deficiently, causing her to hire someone else to redo his work. Under those more traditional circumstances, her damages would consist of what she had to pay a third-party to produce the result White had promised and had been paid to provide. *Cf. Warren v. Springfield United Roofing Corp.*, 2d Dist. Greene No. 88 CA 77, 1989 WL 68286 (June 23, 1989) (finding repair damages of $3,766.93 appropriate where plaintiffs were required to have their roof replaced a second time after they paid defendant $3,750 to replace the roof and he failed to perform the job in a workmanlike manner). Here, however, White never completed the job at all, and the trial court ordered Fahrubel's partial payment returned to her. Under these circumstances, her only loss, at least with respect to the car itself, is the value of the inoperable vehicle. Allowing Fahrubel to recover from White both the money she paid him and the value of her car in good condition would be like allowing

only value in its inoperable condition was for "scrap" metal. The parties presented no evidence below, however, with regard to the scrap value of the vehicle. And the trial court made no finding regarding the value of Fahrubel's vehicle in the condition that it was in when she presented it to White. In our view, the most appropriate course of action is to remand the matter to the trial court, as the trier of fact, to determine the value of White's inoperable vehicle in the first instance and to award damages in accordance with our analysis above.

{¶ 12} For present purposes, we hold that the trial court's damages award is against the manifest weight of the evidence. Accordingly, we reverse the trial court's judgment and remand the cause for further proceedings consistent with this opinion.

. . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.

Copies mailed to:

Pamela Fahrubel
Aaron White
Hon. David P. Mesaros, Acting Judge

---

the plaintiffs in *Warren v. Springfield United Roofing* to recover from the defendant roofer both the $3,750 they paid him and the $3,766.93 they paid a second roofer to redo his work. But the defendant in that case was not obligated to return the money the plaintiffs paid him *and* to pay for them to obtain another new roof. In the same way, Fahrubel is not entitled to collect from White both the $1,400 she paid and the value of her vehicle in good, repaired condition.